UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHIRLEY ANTONINI,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**WELLS FARGO BANK, N.A.,**<br><br>**Defendant.** | CIVIL ACTION<br><br>NO.:<br><br>**JURY TRIAL DEMANDED**<br><br>*ELECTRONICALLY FILED* |

## COMPLAINT

Plaintiff, Shirley Antonini, by and through her attorneys, brings this civil action for damages against the above-named Defendant, Wells Fargo Bank, N.A., demands a trial by jury, and complains and alleges as follows:

### JURISDICTION AND VENUE

1. Jurisdiction of the claims set forth in this Complaint is proper in this judicial district pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e *et seq*., and 28 U.S.C. §§1331 and 1343.

2. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this Judicial District, and under 42 U.S.C. § 2000e-5(f)(3), in that among other things the unlawful discrimination practices that are the subject of this action were committed in this Judicial District.

3. Declaratory relief is sought pursuant to 28 U.S.C. §§2201 and 2202.

## THE PARTIES

4. Plaintiff, Shirley Antonini (hereinafter referred to as "Ms. Antonini" or "Plaintiff"), is an adult female individual currently residing Schuylkill County, Pennsylvania.

5. Defendant, Wells Fargo Bank, N.A. (hereinafter referred to as "Wells Fargo") is a Delaware Limited Liability Company and the prime subsidiary of Wells Fargo & Company, with its corporate headquarters and principal executive offices located at 420 Montgomery Street, San Francisco, San Francisco County, California 94163.

6. At all times relevant and material hereto, Wells Fargo owned and operated the Wells Fargo Bank located at 1085 East Park Drive, Harrisburg, Dauphin County, Pennsylvania 17111 (hereinafter referred to as "Union Deposit Branch").[1]

7. Wells Fargo provides banking services at over 5,600 branch locations throughout the United States of America, including the Union Deposit Branch.

---

[1] https://www.wellsfargojobs.com/en/life-at-wells-fargo/about-us/ (as of December 13, 2024).

## ADMINISTRATIVE PROCEEDINGS

8. Ms. Antonini initiated a Complaint with the Equal Employment Opportunity Commission ("EEOC"), which was later formalized and docketed as Charge No. 530-2025-01176 on November 12, 2024, with instruction to be cross-filed by the EEOC with the Pennsylvania Human Relations Commission ("PHRC") for purposes of being dual filed with the PHRC.

9. Ms. Antonini has been advised of her individual right to bring a civil action by receiving a Dismissal and Notice of Rights from the EEOC, dated November 15, 2024. [2]

10. All necessary and appropriate administrative prerequisites to the filing of this action have occurred and have been satisfied.

## STATEMENT OF FACTS

11. Ms. Antonini began her career with Wells Fargo on or about September 1, 1998.

12. Throughout Ms. Antonini's more than twenty-seven (27) years of employment with Wells Fargo, she received several promotions, pay increases, and achievement awards solidifying her as an important and valuable employee for Wells Fargo.

---

[2] Plaintiff's claims for sex discrimination/harassment and retaliation were "dual-filed" with the PHRC on or about November 12, 2024. As such, Plaintiff intends to amend her Complaint to include these state claims once they become ripe, one year from their PHRC filing date.

13. At all times during Ms. Antonini's lengthy career with Wells Fargo, she was a professional, dedicated, and loyal employee who always gave her absolute best to ensure Wells Fargo's success.

14. By way of example, in the later part of Ms. Antonini's career, she accepted a transfer to Wells Fargo's Union Deposit Branch on or about September 7, 2022, which included a promotion to the Senior Premier Banking position.

15. At the time of the transfer, Wells Fargo employees considered the Union Deposit Branch to be an unattractive location due to its reputation of being a difficult and hostile place to work because of its management.

16. Despite its reputation, Ms. Antonini was willing to take on the challenge at Wells Fargo's request given her dedication and loyalty to Wells Fargo, evidenced by her aforementioned twenty-seven (27) plus years of employment, inclusive of her prior service with financial institutions previously acquired by Wells Fargo.

17. Ms. Antonini realized that the Union Deposit Branch's problematic reputation was justified when she was placed under the direct supervision of Shawn Key, a four (4) month Branch Manager for the Union Deposit Branch.

18. At the outset, Mr. Key showed little to no interest in Ms. Antonini joining the Union Deposit Branch, evidenced by the fact that he never provided her with the necessary and/or proper training relevant to the Senior Premier Banking position upon her arrival.

19. In addition to refusing to properly train Ms. Antonini, Mr. Key created a sexually hostile work environment for her and her female colleagues, which he combined with his authoritative position to discriminate against women and treat them less favorably than Wells Fargo's male employees.

20. Specifically, Mr. Key would touch Ms. Antonini without her permission, make inappropriate comments or references about her body, insist on using the women's restroom (despite having his own), exit the restroom while pulling up and adjusting his pants in front of her and other female employees, play sexually inappropriate music and watch inappropriate movies in the employee breakroom during lunch, and intentionally alter Ms. Antonini's job description to include private work in the vault so that he could stare at her when she would have to bend over (often in a skirt) to perform a money count.

21. After each of these occurrences, Ms. Antonini repeatedly made Mr. Key aware that these acts were unwanted, offensive, and constituted sexual harassment.

22. However, Mr. Key's inappropriate behavior became a constant during her time at the Union Deposit Branch and continued despite Ms. Antonini's requests that he stop his sexual harassment and discrimination.

23. As a result, Ms. Antonini reported Mr. Key's sexually inappropriate conduct and gender discrimination to Wells Fargo's anonymous hotline in or about June 2022, and later directly to Wells Fargo's Human Resources Department ("HR Department") on an ongoing basis through in or about August 2024, after Ms. Antonini's reports through the Wells Fargo hotline failed to address the sexually hostile work environment

24. Unfortunately, doing so worked to Ms. Antonini's detriment as her anonymous reports to the Wells Fargo hotline and direct reports to their HR Department were immediately made known to Mr. Key, as well as Claudette Mack, the District Manager responsible for the Union Deposit Branch, while Wells Fargo did nothing to address her actual concerns.

25. Specifically, Mr. Key became upset with Ms. Antonini because she escalated her reports to his superiors, and Ms. Mack likewise became upset and threatened her in or around late August 2024 to stop reporting Mr. Key's inappropriate conduct because it created issues that she [Ms. Mack] did not have time to address.

26. At that time, Ms. Antonini informed Ms. Mack that she did not feel safe working with Mr. Key and requested a transfer, all of which went unaddressed by Ms. Mack.

27. At or around that same time, Ms. Antonini again reported this ongoing discrimination and retaliation both to Wells Fargo's employee hotline and to Wells Fargo's HR Department.

28. These complaints included Ms. Mack's threat instructing Ms. Antonini to stop engaging in the protected activity of reporting Mr. Key's unlawful conduct.

29. Soon after making these latest reports, Ms. Antonini was terminated on or about September 6, 2024, for allegedly referring a client to a Wells Fargo financial advisor without first speaking to the client – a pretext considering this never occurred and, if it had, would never give rise to the termination of a highly valued employee with more than twenty-seven (27) years of experience who received several raises and promotions during her tenure, including monthly letters of praise from Wells Fargo's President, Laura Haffner.

30. Ms. Antonini's termination was the product of unlawful retaliation for engaging in the protected activity of reporting a sustained period of unlawful sexual harassment, gender discrimination, and retaliation by Wells Fargo's high-level management, all of which violated her federal rights pursuant to Title VII.

## COUNT I

## VIOLATIONS OF TITLE VII
*Sexual Discrimination and Harassment*
*(Plaintiff v. Defendant)*

31. All prior paragraphs are incorporated herein as if set forth fully below.

32. At all relevant times hereto, Plaintiff was a female and, therefore, a member of a class of individuals protected against discrimination and harassment on the basis of her sex during her employment with Defendant.

33. Plaintiff was subjected to discrimination and harassment (hostile work environment) on the basis of her female sex in violation of Title VII, as described above.

34. The discrimination and harassment (hostile work environment) on the basis of sex to which Plaintiff was subjected would have detrimentally affected any reasonable person in her position.

35. Defendant created, permitted, tolerated, encouraged, and fostered a hostile, intimidating, demeaning, degrading and demoralizing environment on the basis of Plaintiff's sex at its facility where she worked, which hostile environment was ongoing throughout her employment.

36. Defendants actions and inactions, as more fully described above, were sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and create a hostile and abusive work environment, thereby

constituting unlawful discrimination and harassment (hostile work environment) on the basis of her sex.

37.     Defendant's failure to maintain a workplace free from discrimination and harassment (hostile work environment) on the basis of Plaintiff's sex was intentional, malicious, and in reckless indifference to her protected federal rights.

38.     This discrimination and harassment (hostile work environment) Plaintiff was subjected to on the basis of her sex was specifically known to Defendant's management, including its HR Department, which took no meaningful or effective action to remediate the offending behavior or to remove the offending environment.

39.     Defendant failed to exercise reasonable care to prevent, correct, and/or remedy the unlawful discrimination and harassment (hostile work environment) on the basis of Plaintiff's sex.

40.     As a consequence of the discrimination and harassment (hostile work environment) on the basis of Plaintiff's sex, supported and encouraged by Defendant's actions and failures to act, Plaintiff was subjected to emotional distress, humiliation, ridicule, and a negative effect on her work product and ability to fully and effectively perform her job duties and responsibilities, all of which manifested itself in mental and physical distress, injury, and damage.

41. As a result of this discrimination and harassment (hostile work environment) on the basis of Plaintiff's sex and Defendant's inaction to remedy the same, Plaintiff has suffered economic loss, including loss of earnings, emotional distress, humiliation, and embarrassment, a loss of self-respect and confidence, and has been subjected to great damage to her career and professional reputation and standing.

42. Plaintiff has and continues to suffer irreparable harm as a result of Defendant's violation of her protected federal rights.

**WHEREFORE**, Plaintiff, Shirley Antonini, seeks the damages against Defendant, Wells Fargo Bank, N.A., as set forth in the *Ad Damnum* clause of this Complaint, see infra, which total amount exceeds the jurisdictional limits for mandatory arbitration referral.

## COUNT II

**VIOLATIONS OF TITLE VII**
*Retaliation*
*(Plaintiff v. Defendant)*

43. All prior paragraphs are incorporated herein as if set forth fully below.

44. As set forth above, as a result of Plaintiff's frequent complaints of discrimination and harassment (hostile work environment) on the basis of her sex, Defendant through its management retaliated against Plaintiff by terminating her employment.

45. As a result of Defendant's actions, Plaintiff has suffered economic loss, including loss of earnings, emotional distress, humiliation, and embarrassment, a loss of self-respect and confidence, and has been subjected to great damage to her career and professional reputation and standing.

**WHEREFORE**, Plaintiff, Shirley Antonini, seeks the damages against Defendant, Wells Fargo Bank, N.A., as set forth in the *Ad Damnum* clause of this Complaint, see infra, which total amount exceeds the jurisdictional limits for mandatory arbitration referral.

## *AD DAMNUM* CLAUSE/PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Shirley Antonini, seeks the damages against Defendant, Wells Fargo Bank, N.A., as set forth in the *Ad Damnum* clause of this Complaint, and that it enters an Order as follows:

a. Defendant is to be permanently enjoined from discriminating, harassing, and/or retaliating against Plaintiff on the basis of her sex, and/or any basis prohibited under applicable federal and state law;

b. Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of discriminating, harassing, and/or retaliating against Plaintiff on the basis of her sex, national origin, and/or any basis prohibited under applicable federal law, and is to be

ordered to promulgate an effective policy against such discrimination, harassment, and retaliation and to adhere thereto;

c. Defendant is to compensate Plaintiff, reimburse Plaintiff, and to make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension and seniority.  Plaintiff should be accorded those benefits illegally withheld from the date she first suffered discrimination and/or retaliation at the hands of Defendant until the date of verdict;

d. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused to her by Defendant's actions;

e. Plaintiff is to be awarded punitive damages as provided for under Title VII;

g. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

h. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal law;

i. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of any applicable caps on certain damages set forth in applicable law;

j. Plaintiff is to be granted such additional injunctive or other relief as she may request during the pendency of this action in an effort to ensure the Defendant does not engage - or ceases engaging - in illegal retaliation against the Plaintiff or other witnesses to this action; and

k. The Court is to maintain jurisdiction of this action after verdict to ensure compliance with its Orders therein.

## DEMAND FOR JURY

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff respectfully demands a trial by jury.

Respectfully submitted,

**WEISBERG CUMMINGS, P.C.**

Dated: December 13, 2024

*/s/ Derrek W. Cummings*
Derrek W. Cummings, Esquire
PA I.D. #: 83286
dcummings@weisbergcummings.com

*/s/ Larry A. Weisberg*
Larry A. Weisberg, Esquire
PA I.D. #: 83410
lweisberg@weisbergcummings.com

*/s/ Steve T. Mahan*
Steve T. Mahan, Esquire
PA I.D. #: 313550
smahan@weisbergcummings.com

*/s/ Michael J. Bradley*
Michael J. Bradley, Esquire
PA I.D. #: 329880
mbradley@weisbergcummings.com

2704 Commerce Drive, Suite B
Harrisburg, PA 17110-9380
(717) 238-5707
(717) 233-8133 (Fax)

*Counsel for Plaintiff*